## MATTER OF BARCENAS

In Deportation Proceedings

A–26783984

*Decided by Board March 23, 1988*

(1) An alien who raises the claim questioning the legality of evidence must come forward with proof establishing a prima facie case before the Immigration and Naturalization Service will be called upon to assume the burden of justifying the manner in which it obtained evidence. *Matter of Burgos*, 15 I&N Dec. 278 (BIA 1975), followed.

(2) Where an alien wishes to challenge the admissibility of a document, the mere offering of an affidavit is not sufficient to sustain his burden.

(3) If the affidavit is such that the facts alleged, if true, could support a basis for excluding the evidence, then the claims must also be supported by testimony.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Jan Joseph Bejar, Esquire
2220 Fifth Avenue
San Diego, California 92101

ON BEHALF OF SERVICE:
Alan S. Rabinowitz
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated February 12, 1985, an immigration judge found the respondent deportable as charged, denied his requests for suspension of deportation and voluntary departure, and ordered him deported from the United States. The respondent has appealed. The appeal will be dismissed. The request for oral argument is denied. *See* 8 C.F.R. § 3.1(e) (1988).

The respondent is a 37-year-old male, a native and citizen of Mexico. An Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) alleges that the respondent entered the United States near San Ysidro, California, on an unknown date in April of 1979 without inspection by an immigration officer. During the deportation proceedings, the respondent admit-

ted his name and testified that he was born on April 29, 1948, and named his parents as Manuel Barcenas-Flores and Filomenn Casteneda. The respondent invoked the fifth amendment and refused to answer where he was born. He further moved to suppress evidence concerning his deportability.

In order to establish the respondent's alienage and deportability, the Immigration and Naturalization Service introduced a Record of Deportable Alien (Form I-213) into evidence and presented the testimony of United States Border Patrol Officer Patrick Tatro. Officer Tatro identified Form I-213 and testified that he prepared the form from answers provided to him by the respondent. Officer Tatro testified concerning the circumstances surrounding the respondent's apprehension, stating that he and another officer responded to a San Diego police request. Apparently the San Diego police were detaining a number of suspected illegal aliens near a bus station. As Officer Tatro was walking past the bus station he spotted the respondent sitting there. Officer Tatro told the other officer that he had arrested the respondent on a previous occasion. He also believed that there were other suspected illegal aliens sitting near the respondent. Officer Tatro approached the respondent and identified himself. In response to a question regarding his citizenship, the respondent stated that he was a citizen of the United States and was born in San Antonio, Texas. In order to determine the truth of the respondent's assertion, Officer Tatro asked the respondent if he knew where the Alamo was located in Texas. The respondent had no idea of what Officer Tatro was referring to and Officer Tatro then suspected that the respondent was not being truthful. The respondent was advised that it was a felony offense to claim United States citizenship before a United States immigration officer. In response to another question the respondent then admitted that he was a native and citizen of Mexico. The respondent further admitted that he had no immigration documents in his possession. The respondent was then apprehended and transported to a Service office where a Form I-213 was completed. In his testimony, Officer Tatro specifically denied that the respondent's Latin appearance was a factor in the apprehension. The immigration judge accepted the Form I-213 into evidence and found the respondent to be deportable as charged.

On appeal, the respondent contends that the evidence against him should be suppressed because of an alleged violation of Service regulations. The respondent also asserts that his statements were made in an allegedly coercive environment and were not voluntary. He therefore requests that the proceedings against him be termi-

nated. In the alternative, he seeks a grant of voluntary departure. We find the respondent's contentions to be without merit.

The Form I-213 was properly admitted into evidence. Deportation proceedings are civil in nature and are not bound by the strict rules of evidence. *Tashnizi v. INS*, 585 F.2d 781 (5th Cir. 1978). Rather, the tests for the admissibility of documentary evidence in deportation proceedings are that evidence must be probative and that its use must be fundamentally fair. *Trias-Hernandez v. INS*, 528 F.2d 366 (9th Cir. 1975); *Marlowe v. United States INS*, 457 F.2d 1314 (9th Cir. 1972); *Matter of Toro*, 17 I&N Dec. 340 (BIA 1980).

Border Patrol Officer Tatro testified concerning the respondent's admissions in regard to his alienage and deportability. The Form I-213 reflects that Officer Tatro completed the form based upon admissions made by the respondent. The respondent admitted that he was a citizen of Mexico who entered the United States without inspection by an immigration officer. He did not testify during the deportation proceedings. While counsel objected to the admission of Form I-213 into evidence, he offered no evidence to even suggest that the contents of the form did not relate to the respondent, that the information was erroneous, or that it was the result of coercion or duress. Absent any indication that a Form I-213 contains information that is incorrect or was obtained by coercion or duress, that document is inherently trustworthy and admissible as evidence to prove alienage and deportability. *Matter of Mejia*, 16 I&N Dec. 6 (BIA 1976); *Matter of Davila*, 15 I&N Dec. 781 (BIA 1976), *remanded, Davila-Villacaba v. INS*, 594 F.2d 242 (9th Cir. 1979); *see also Tejeda-Mata v. INS*, 626 F.2d 721 (9th Cir. 1980). We therefore find that the Form I-213 was properly authenticated and admitted into evidence.

We also observe that "[o]ne who raises the claim questioning the legality of the evidence must come forward with proof establishing a prima facie case before the Service will be called on to assume the burden of justifying the manner in which it obtained the evidence." *Matter of Burgos*, 15 I&N Dec. 278, 279 (BIA 1975); *see also Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 505 (BIA 1980); *Matter of Wong*, 13 I&N Dec. 820, 821-22 (BIA 1971); *Matter of Tang*, 13 I&N Dec. 691, 692 (BIA 1971). Where a party wishes to challenge the admissibility of a document, the mere offering of an affidavit is not sufficient to sustain his burden. First, if an affidavit is offered, which, if accepted as true, would not form a basis for excluding the evidence, the contested document may be admitted into the record. Such was the case here. If the affidavit is such that the facts alleged, if true, could support a basis for excluding the evidence in question, then the claims must also be supported by testi-

mony. The respondent's declaration alone was therefore insufficient to sustain his burden.

The respondent also contends that his application for voluntary departure should have been granted. We disagree. In order to qualify for the privilege of voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e) (1982), the respondent must establish that he has been a person of good moral character for at least 5 years preceding his application. Section 101(f)(6) of the Act, 8 U.S.C. § 1101(f)(6) (1982), provides as follows:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—
>
> (6) one who has given false testimony for the purpose of obtaining any benefits under this Act.

The respondent testified under oath that he entered the United States for the first time in April of 1977 and had not left the country since that time. The respondent was advised that he was testifying under oath. The Service attorney asked the respondent, "Have you left the United States since April of 1977 and gone across the border to Mexico?" The respondent testified, "No, Sir." Once again the Service attorney asked, "Are you telling the truth, Sir?" The respondent again testified, "Yes, Sir." The respondent not only testified that he had not left the United States since April of 1977, he produced a witness to corroborate that assertion. Finally, the respondent's assertion that he had not left the United States since April of 1977 was exposed as a prevarication when he admitted under cross-examination that he had returned to Mexico in 1983 to marry his wife. We find, therefore, that the respondent gave false testimony under oath during the deportation proceedings. Consequently, he is statutorily ineligible for a grant of voluntary departure. *See Bufalino v. Holland,* 277 F.2d 270, 276 (3d Cir.), *cert. denied,* 364 U.S. 863 (1960); *Matter of Namio,* 14 I&N Dec. 412 (BIA 1973); *Matter of Ngan,* 10 I&N Dec. 725 (BIA 1964); *Matter of G–L–T,* 8 I&N Dec. 403 (BIA 1959); *cf. United States v. Abdulghani,* 671 F. Supp. 754 (N.D. Ga. 1987).

Accordingly, the appeal will be dismissd.

**ORDER:** The appeal is dismissed.