**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE LUIS GARCIA-GARCIA, | No. 10-70432 |
| Petitioner, | Agency No. A079-638-308 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 4, 2013
San Francisco, California

Before: HAWKINS, GOULD, and PAEZ, Circuit Judges.

Jose Luis Garcia-Garcia petitions for review of an order of the Board of

Immigration Appeals dismissing his appeal of a decision by an immigration judge

denying his motion to suppress evidence of alienage and to terminate proceedings,

and ordering Garcia-Garcia removed from the United States.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Generally, the exclusionary rule does not apply in civil immigration proceedings. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1034, 1050 (1984); *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1015 (9th Cir. 2008). However, "administrative tribunals are still required to exclude evidence that was 'obtained by deliberate violations of the Fourth Amendment or by conduct a reasonable officer should know is in violation of the Constitution.'" *Lopez-Rodriguez*, 536 F.3d at 1016 (quoting *Orhorhaghe v. INS*, 38 F.3d 488, 493 (9th Cir. 1994)).

Seizing an individual based solely on his or her Hispanic appearance or Hispanic-sounding name is an egregious violation of the Fourth Amendment. *See Orhorhaghe*, 38 F.3d at 497-98, 503; *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1448-50 (9th Cir. 1994). Garcia-Garcia, however, has offered absolutely no evidence that his Hispanic appearance or his Hispanic-sounding last name were the reasons for his continued detention. In fact, he freely admitted that he did not know why immigration officers took custody of him after he had been judicially cleared of criminal charges. Furthermore, his argument that, "[a]bsent another explanation, it should be presumed that his Hispanic appearance and surname were the grounds for his continued detention in Los Angeles even after he was cleared of criminal charges," is without basis in the law and we decline to adopt it.

**PETITION DENIED.**

*Garcia-Garcia v. Holder*, No. 10-70432

HAWKINS, Senior Circuit Judge, concurring:

Because it is not clear the DHS agents who assumed custody of Petitioner in Los Angeles knew that the detainer issued against him may have referred to a different individual, their arrest of Petitioner did not violate the Fourth Amendment. *See Hill v. California*, 401 U.S. 797, 802-04 (1971); *United States v. Espinosa*, 827 F.2d 604, 609 (9th Cir. 1987). Accordingly, I join the Court's opinion in full.

I write separately to remind all parties that they have a shared responsibility to build a complete record during administrative proceedings. Documents that are integral to the parties' factual and legal claims should be included in the record presented to this court.

Here, DHS relies on the Form I-213 as its sole evidence of alienage. For his part, Petitioner argues DHS's reliance on an immigration detainer, Form I-247, in arresting Petitioner ran afoul of the Constitution. In the context of removal proceedings, these are both serious charges. But the relevant documents are not before us. The I-247 is not in the record. The I-213 is missing a critical attachment. The Mexican identification, which the BIA reasoned provided DHS with reasonable suspicion to arrest Petitioner, is not in the record. The absence of these critical documents frustrates this court's ability to review the proceedings below.

Going forward, DHS should voluntarily furnish the immigration court with

documents in its possession that are central to the litigation. If the agency refuses to produce these "essential" documents, the alien may subpoena them. 8 C.F.R. §§ 1003.35, 1287.4(a)(2)(ii); *see Oliva-Ramos v. Att'y Gen'l*, 694 F.3d 259, 273 (3d Cir. 2012) (remanding with instructions to grant subpoenas in a suppression case). And the IJ and BIA should demand their inclusion in the record. As neutral decisionmakers, the IJ and BIA should insist all relevant facts be before them when deciding whether an individual is to be removed from this country.

Nor, in these suppression cases, should the government be able to cite *Matter of Barcenas*, 19 I. & N. Dec. 609 (BIA 1988), to disclaim any responsibility to produce records and witnesses. In my view—and, it seems, in the view of the Second and Third Circuits—the *Barcenas* "burden," *id.* at 611, refers only to the alien's burden of persuasion, and not to the burden of production of relevant evidence. *See Cotzojay v. Holder*, 725 F.3d 172, 179-80, 183 (2d Cir. 2013) (requiring petitioner to furnish only personal testimony before requiring the government to justify the seizure); *Oliva-Ramos*, 694 F.3d at 273 (holding petitioner was entitled to subpoena agency records and personnel to establish constitutional claim); *cf. Kaur v. I.N.S.*, 237 F.3d 1098, 1100–01 (9th Cir. 2001) (remanding with instruction to grant asylum applicants a subpoena for evidence material to their claim). A contrary interpretation risks violating the principles of fundamental fairness governing removal proceedings.

*See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984) (plurality op.); *Saidane v. I.N.S.*, 129 F.3d 1063, 1065 (9th Cir. 1997).